No. 86-538

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

_____

IN THE MATTER OF M.G.M.,
Youth in Need of Care.

_____

APPEAL FROM:  District Court of the Thirteenth Judicial District,
              In and for the County of Yellowstone,
              The Honorable William Speare, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

            Ralph L. Herriott, Billings, Montana

       For Respondent:

            Hon. Mike Greely, Attorney General, Helena, Montana
            Harold Hanser, County Attorney, Billings, Montana
            Greg Mullowney, Deputy County Atty., Billings
            Damon Gannett, Guardian Ad Litem, Billings, Montana

_____

                         Submitted on Briefs:  July 1, 1987

                             Decided:  August 20, 1987

Filed:  AUG 20 1987

_Ethel M. Harrison_
_____
            Clerk

Mr. Justice R. C. McDonough delivered the Opinion of the Court.

The natural father of M.G.M. appeals the September 2, 1986, order of the Thirteenth Judicial District Court, County of Yellowstone, finding M.G.M. to be a youth in need of care and awarding temporary custody to the Montana Department of Social and Rehabilitation Services. We affirm.

This matter was previously before this Court in In the Matter of M.G.M. (1982), 201 Mont. 400, 654 P.2d 994. The pertinent facts of the case prior to 1982 are contained in that opinion. On appeal, we reversed the lower court's termination of the natural father's parental rights for failure to find that M.G.M. was a youth in need of care and remanded for further findings.

During the pendency of the previous appeal, M.G.M. was placed in a foster home in Missoula. Following remand, the termination of parental rights proceedings were halted midway through trial by agreement of the parties. In a court approved stipulation, the parties agreed that M.G.M. would be placed in the care and custody of the natural father for a period of six weeks. During that period, M.G.M. would meet once a week with psychologist Richard Agosto to monitor M.G.M.'s mental and emotional well-being. In the event Dr. Agosto found M.G.M. was suffering, or likely to suffer, identifiable and substantial impairment of her intellectual or psychological functioning due to the acts or omissions of the natural father, M.G.M. would return to her foster home on a permanent basis. The natural father would maintain visitation rights under the agreement.

Dr. Agosto issued a written report on August 2, 1985, concerning M.G.M.'s mental and emotional well-being during her stay with the natural father. Dr. Agosto found that

2

M.G.M's intellectual development was close to that of a fifteen year old while her emotional and social development was comparable to the nine or ten year old level. During M.G.M.'s six week stay with the natural father, Dr. Agosto noted symptoms of emotional stress by M.G.M. including sleep disruption, weight loss, fatigue, feelings of helplessness and increased levels of anger. M.G.M. considered the natural father and his new wife to be critical of her which diminished M.G.M.'s self-esteem.

In his report, Dr. Agosto concluded that M.G.M. suffered identifiable impairment of her psychological functioning during her stay with the natural father. Dr. Agosto described M.G.M. as a very vulnerable young teenager in need of a supportive and loving family. Dr. Agosto recommended that M.G.M. return to her foster family.

The natural father filed a contempt petition on September 12, 1985, alleging the State and guardian ad litem had violated the terms of the stipulation and that he was entitled to custody of M.G.M. Specifically, the natural father alleged that Dr. Agosto did not conclude M.G.M. had suffered substantial impairment of her intellectual or psychological functioning necessary to terminate his custody rights as provided in the agreement. A hearing on the contempt motion was held October 31, 1985.

Dr. Agosto testified at the hearing that he concluded M.G.M. had suffered substantial impairment of her psychological functioning during her stay with the natural father and would be at risk of greater emotional stress should the placement continue. Following hearing, the court denied the contempt motion of the natural father.

On January 8, 1986, the State filed a motion to set a hearing date to determine whether M.G.M. was a youth in need of care and whether the stipulation entitled the State to

3

maintain M.G.M.'s placement with her foster family in Missoula. A hearing was held February 6, 1986, and testimony received from Vince Matule, director of the Casey Family Foundation which was responsible for monitoring M.G.M's placement. Matule recommended that M.G.M. continue in her present foster home placement with the natural father retaining visitation rights. Matule believed that M.G.M. was in need of stability and a secure family during her adolescence and that her foster family in Missoula met these needs.

The District Court entered its findings of fact, conclusions of law, and order on September 2, 1986. The court found M.G.M. to be a youth in need of care, that it was in M.G.M.'s best interest to continue her placement with her foster family, and that the natural father shall be entitled to regular visitation. The natural father appeals and raises the following issue: Are the District Court's findings of fact and conclusions of law supported by clear and convincing evidence?

The natural father first contends that the District Court erred in adopting previous findings of the District Court because such findings were rejected on appeal by this Court. We disagree. Our previous opinion in this matter clearly stated that the case was remanded "for further findings." 201 Mont. at 401, 654 P.2d at 998. We reversed on appeal because the lower court failed to find that the natural father abused or neglected M.G.M. In order to deprive a parent of child custody pursuant to §§ 41-3-404 and -406, MCA, the court must find that the child is abused, neglected or dependent.

With the exception of the District Court finding relating to opinion testimony of the psychiatric nurse, this Court did not reject any of the District Court's findings in

4

our previous opinion. We find no error in the District Court adopting these findings on remand. Findings one through nine, objected to by the natural father, are supported by substantial credible evidence.

The natural father contends there is insufficient evidence to support Dr. Agosto's conclusion that M.G.M. suffered substantial impairment of her psychological functioning during her stay with the natural father and would be at risk of increased emotional stress if the placement continued. The record shows Dr. Agosto is well qualified as a clinical psychologist. Dr. Agosto had weekly sessions with M.G.M. during her stay with the natural father. Dr. Agosto noted that M.G.M. suffered the classic symptoms of depression and emotional stress during the period. Dr. Agosto's testimony and affidavit reflect his belief that M.G.M. suffered substantial psychological impairment while in the custody of the natural father. We find no reason to doubt Dr. Agosto's conclusions regarding M.G.M.

The natural father further contends that there is not clear and convincing evidence to support the District Court's finding that M.G.M. was a youth in need of care and that the court again improperly applied the "best interest" test. In finding M.G.M. to be a youth in need of care, the District Court applied § 41-3-102, MCA, which provides in part:

> (2) An "abused or neglected child" means a child whose normal physical or mental health or welfare is harmed or threatened with harm by the acts or omissions of his parent or other person responsible for his welfare.

M.G.M. spent the first five years of her life with her mother, who suffered from chronic schizophrenia. M.G.M. did not develop normally and adapted to a role-reversal with her mother. The testimony of mental health professionals in this

5

case indicates that children of schizophrenics increase their risk of developing schizophrenia if raised by schizophrenic parents because they fail to properly develop their own self-identity. The natural father is also a diagnosed schizophrenic.

Testimony was given at the May 2 and 3, 1985, hearing by three mental health professionals involved with the case. Each witness favored placing M.G.M. with a foster family to prevent the possibility of M.G.M. developing schizophrenia as a result of being raised by a schizophrenic parent.

Dr. Wagner, a clinical psychologist, testified that it would be stressful for M.G.M. to be in the custody of the natural father, and recommended that M.G.M. continue to reside with her foster family. Testimony was also received from Dr. Tranel, a psychologist who interviewed and tested both M.G.M. and the natural father in 1980. Dr. Tranel stated his opinion that the acts, conduct, or omissions of the natural father posed imminent risk of harm to M.G.M's psychological well-being.

Mary Honaker, a certified mental health professional who conducted therapy with M.G.M., testified that M.G.M. was distressed and apathetic during periods when she visited the natural father. Honaker testified that she felt further visits with the natural father would be harmful to M.G.M.

Dr. Tranel, Dr. Wagner and Ms. Honaker, were not actively involved with M.G.M. or the natural father after 1981. However, both Dr. Tranel and Dr. Wagner testified that the natural father's schizophrenic condition would not improve without therapy and treatment. There is no evidence that the natural father has sought treatment for his condition.

We find clear and convincing evidence in the record to support the District Court's determination that M.G.M. is a

6

youth in need of care within the meaning of § 41-3-102, MCA. The record clearly supports transferring custody to the State with M.G.M. continuing in her present foster home.

The District Court is affirmed.

_____
Justice

We Concur:

_____
_____
_____
_____
Justices

7